IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ELGSWIN DAVIS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No.: 09-CV-778 |
| ) | |
| CITY OF CHICAGO, OFFICER A.Z. SILVA ) | Judge Robert M. Dow, Jr., |
| and OFFICER A. AZEVEDO, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Elgswin Davis has sued the City of Chicago and Chicago Police Officers A.Z. Silva and A. Azevedo for violations of state and federal law stemming from his arrest on August 10, 2008. Counts I, II, and III are brought pursuant to 42 U.S.C. § 1983, alleging unlawful seizure of Plaintiff (Count I), unlawful seizure of Plaintiff's property (Count II), and unreasonable detention (Count III). Count VI is a *Monell* claim for failure to train. Plaintiff's remaining claims allege state law violations for malicious prosecution (Count IV) and false imprisonment (Count V). Defendants have moved for summary judgment on all counts. For the reasons set forth below, the Court grants Defendants' motion for summary judgment [73] on Counts I, II, III, and VI. The Court dismisses without prejudice Plaintiff's state law claims for malicious prosecution (Count IV) and false imprisonment (Count V).

**I.     Factual Background**

At approximately 9:00 p.m. on August 10, 2008, Plaintiff Elgswin Davis was sitting in the passenger seat of a parked vehicle located on Ridgeway Avenue in Chicago, Illinois. The engine and the headlights to the vehicle were off. The parked car was registered to Plaintiff's

wife, Charlene Davis. Plaintiff and his friend, Maurice Cook, had just returned to the car after purchasing cigarettes at a nearby store. After returning to the car, Cook sat in the front driver's seat. Less than a minute later, a police car traveling northbound on Ridgeway drove past the parked vehicle, then reversed and stopped behind Plaintiff's vehicle. The street lights on Ridgeway Avenue were on and working at the time that the patrol car approached Plaintiff's location, while the headlamps on the vehicle in which Plaintiff sat were off. Both Defendant Officers believed that being in a parked vehicle with your headlights off on a lighted street is a violation of the City of Chicago Municipal code, but they were mistaken.

Officers Azevedo and Silva were in the patrol car. Officer Azevedo testified that after stopping his car he noticed an expired registration tag on the rear license plate of the parked vehicle. Officer Azevedo testified that he ran the license plates prior to approaching the vehicle and confirmed that the registration was in fact expired. Officer Silva testified that he did not recall observing the license plate, nor did he recall Officer Azevedo saying anything about an expired registration. Silva testified that he "assume[ed]" that the license plates were run at the same time as the officers ran Plaintiff's name (*i.e.* after the occupants of the car has been ordered out of the vehicle).

After coming to a stop, Defendant Officers Silva and Azevedo exited their patrol car; Officer Azevedo walked to the driver's side of the vehicle to speak with Cook and Officer Silva approached the passenger side of the parked car to speak with Plaintiff. Officer Azevedo requested identification from Cook, but Cook denied having a license on his person. When Cook was unable to produce identification, Azevedo asked Cook to get out of the vehicle for further questioning and he complied.

According to Plaintiff, Officer Silva asked Plaintiff, "what [are] you doing?" and Plaintiff stated that he "just came out of the store." Once Officer Azevedo escorted Cook to the rear of the vehicle, Officer Silva then asked Plaintiff to step out of the vehicle. According to Plaintiff, he got out of the vehicle and Officer Silva asked him for identification, which Plaintiff produced. Officer Silva then led Plaintiff to the back of the vehicle where he searched Plaintiff against the trunk. During this time, Officer Azevedo searched the inside of the vehicle. According to Plaintiff, Officer Azevedo did not find anything inside the car during his search.

After searching Plaintiff, Officer Silva went into his squad car and ran the Plaintiff's name through the computer while Plaintiff remained with his hands upon the trunk. While running the name search, Officer Silva said to Plaintiff, "Oh, you out on parole?" to which the Plaintiff responded, "Yes." According to Plaintiff, Silva then went to a grassy area next to the vehicle and searched through the grass with his foot. After a few minutes, Plaintiff saw Officer Silva bend down and pick up something from the grass. Officer Silva showed Plaintiff the object that he had picked up from the grass and stated, "I found this under your seat."

Officer Silva's account differs substantially from Plaintiff's. According to Silva, after Silva asked Plaintiff to exit the vehicle, Silva observed a zip-lock bag with powder residue on the floorboard of the car between the seat and the door.[1] Silva alerted his partner that there were narcotics next to the seat, at which time Azevedo retrieved the zip-lock bag. Both sides agree that Plaintiff was eventually placed into handcuffs and put in the back of Defendant Officers' squad car. After approximately 10-15 minutes, Defendant Officers took Plaintiff to the 11th District station for processing. The officers did not arrest Maurice Cook or give him any citations for violating the Municipal Code. Once they arrived at the police station, the officers ordered a tow of Plaintiff's vehicle.

---

[1] The officers testified that the bag looked "used" because it was only partially filled.

On August 10, 2008, Plaintiff was charged with unlawful possession of a controlled substance. Defendant Officers also issued two citations to Plaintiff for (i) an expired registration under the Municipal City Code 09-76-160(f)[2] and (ii) headlights sunset/sun-up under Municipal City Code 09-76-090(b). Plaintiff made his initial appearance before a judge on August 11, 2008, and was detained at the Cook County Jail until September 2, 2008, when all charges against him were dismissed as *nolle pros*. Plaintiff's vehicle was repossessed by his finance company and auctioned off.

The officers relied on a document labeled "Vehicle Code Violations Card, Chicago Police Department" to issue a citation for a violation of the municipal lighting ordinance numbered 9-76-090. Officer Azevedo testified that he intended to write Plaintiff a ticket for a violation of 09-76-090(a), despite the fact that the actual violation is written for 09-76-090(b). Section 09-76-090(b) states as follows:

> Whenever a vehicle is parked upon an unlighted street or highway during the hours between one-half hour after sunset and one-half hour before sunrise, such vehicle shall be equipped with one or more lamps which shall exhibit a white light on the roadway side visible from a distance of 500 feet to the front of the vehicle and a red light visible from a distance of 500 feet to the rear."

*Id.* at § 09-76-090(b). Plaintiff's arrest and vice case reports indicate that he was in violation of Municipal Code § 09-76-090(a), for having no lights on when parked upon a *lighted* street. Subsection (a) states as follows: "Whenever a vehicle is lawfully parked at nighttime upon any lighted street within a business or residence district, no lights need be displayed upon such

---

[2] Section 09-76-160(f) of the Chicago Municipal Code states as follows:

> "Every registration plate, temporary permit or evidence of temporary registration must bear evidence of proper registration for the current period and be displayed in the manner required by the secretary of state. It is illegal to park a vehicle on any roadway if the registration plate or other registration material fails to comply with this subsection. Any person who violates this subsection shall be fined the amount set forth in Section 9-100-020 for each offense."

parked vehicle." Both officers believed that, at the time of the arrest, it was a violation of a city ordinance to be inside a vehicle without its headlights illuminated on a public street in the City of Chicago. However, both sides now agree that it is not a violation to be parked on a lighted street with the headlights off.

As part of their training, all officers take a two-hour class called Municipal Code of Chicago ("Code"). Officers are not required to read the entire Code during the class, but they are given a copy for their own reference. During training, officers are given a guide, known as a Vehicle Code Violations Card, to some of the subjects and sections of the Code. This guide does not contain all of the ordinance violations and does not completely describe the elements of each ordinance. (*Id*.). Andrea Hyfantis ("Hyfantis"), an attorney for the City who teaches the Municipal Code of Chicago class, specifically tells officers that the guide is not a complete version of the code.

## II. Standard of Review

Summary judgment is proper where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Factual disputes that are irrelevant to the outcome of the suit "will not be counted." *Palmer v. Marion County*, 327 F.3d 588, 592 (7th Cir. 2003) (quotation marks and citations omitted). In determining whether there is a genuine issue of fact, the Court "must construe the facts and draw all reasonable inferences in the light most favorable to the nonmoving party." *Foley v. City of Lafayette*, 359 F.3d 925, 928 (7th Cir. 2004). To avoid summary judgment, the opposing party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue

for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (internal quotation marks and citation omitted).

A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. at 248. The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. See *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Summary judgment is proper against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id*. at 322. The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In other words, the "mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252.

## III. Analysis

### A. Plaintiffs' Fourth and Fourteenth Amendment Claims

Plaintiff brings § 1983 claims against Defendant Officers for unreasonable seizure of Plaintiff's person and property and for unreasonable detention in violation of the Fourth and Fourteenth Amendments. To prove a claim under § 1983 against the officers, Plaintiff must show that a person acting under color of state law deprived him of a right, privilege, or immunity secured either by the Constitution or federal law. See, *e.g. Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 929 (1982). Defendant Officers do not dispute that they were acting under color of state law at the time of Plaintiff's arrest. Rather, they argue that they had probable cause for Plaintiff's arrest. Because "[p]robable cause to arrest is an absolute defense to any claim under

6

Section 1983 against police officers for wrongful arrest, false imprisonment, or malicious prosecution" (*Mustafa*, 442 F.3d at 547), the Court considers Plaintiff's unlawful seizure and unreasonable detention claims together.

"Probable cause to arrest is an absolute defense to any claim under Section 1983 against police officers for wrongful arrest, false imprisonment, or malicious prosecution." *Mustafa v. City of Chicago*, 442 F.3d 544, 547 (7th Cir. 2006) (citing *Potts v. City of Lafayette*, 121 F.3d 1106, 1113 (7th Cir. 1997)). "This is so even where the defendant officers allegedly acted upon a malicious motive." *Id.* (citing *Simmons v. Pryor*, 26 F.3d 650, 654 (7th Cir. 1993)). Police officers have probable cause to arrest an individual when "the facts and circumstances within their knowledge and of which they have reasonably trustworthy information are sufficient to warrant a prudent person in believing that the suspect had committed" an offense. *Kelley v. Myler*, 149 F.3d 641, 646 (7th Cir. 1998). The Court evaluates probable cause "not on the facts as an omniscient observer would perceive them," but rather "as they would have appeared to a reasonable person in the position of the arresting officer—seeing what he saw, hearing what he heard." *Id.*; see also *Woods v. City of Chicago*, 234 F.3d 979, 987 (7th Cir. 2000); *United States v. Reis*, 906 F.2d 284, 289 (7th Cir. 1990) (courts determine the existence of probable cause by applying an objective standard; it is the mindset of the "reasonable officer" and not of the actual arresting officer that matters). The test, an objective one, is whether a reasonable officer would have believed the person had committed a crime. If the test is satisfied "the arrest is lawful even if the belief would have been mistaken." *Kelly*, 149 F.3d at 646. Thus probable cause has been described as a zone within which reasonable mistakes will be excused. *Id*.

Where the underlying facts supporting probable cause are not in dispute, a court may decide whether probable cause exists. See *Gonzalez v. City of Elgin*, 578 F.3d 526, 537 (7th Cir.

7

2009) (citing *Maxwell v. City of Indianapolis*, 998 F.2d 431, 434 (7th Cir. 1993)). Once probable cause relating to an offense is established, all § 1983 liability against the arresting officer(s) is barred, "even if the person was arrested on additional or different charges for which there was no probable cause." *Holmes v. Village of Hoffman Estate*, 511 F.3d 673, 682 (7th Cir. 2007) (citing *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004)); *Pourghoraishi v. Flying J., Inc.*, 449 F.3d 751, 762 (7th Cir. 2006).

Whether an officer has probable cause to arrest depends on the requirements of the applicable state criminal law. *Pourghoraishi*, 449 F.3d at 761 (citing *Williams v. Jaglowski*, 269 F.3d 778, 782 (7th Cir. 2001)). Thus, as long as an officer has probable cause to believe that an individual "has committed even a very minor criminal offense in his presence," the officer may arrest the offender without violating the Fourth Amendment. *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001). "As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." *Whren v. United States*, 517 U.S. 806, 810 (1996); see also *Carmichael v. Village of Palatine, Ill.*, 605 F.3d 451, 456-57 (7th Cir. 2010)

In this case, it is not disputed that on the evening of August 10, 2008, Plaintiff was sitting in his wife's car on Ridgeway Avenue. Plaintiff was cited for three independent offenses: expired registration, violation of a lighting ordinance, and possession of a controlled substance. Probable cause for any one of these offenses is sufficient probable cause for Plaintiff's arrest. This is true even though the lighting ordinance and expired registration offenses are punishable only by fine. See *Atwater*, 532 U.S. at 354 (holding that arrests for misdemeanor violations that would be punishable only by a fine do not offend any constitutional principles); *Williams v. Jaglowski*, 269 F.3d 778, 784 (7th Cir. 2001); *Antia v. Thurman*, 914 F. Supp. 256, 258 (N.D. Ill.

1996) (finding that officer had probable cause to arrest plaintiff when it was undisputed that the vehicle registration was expired).

Defendant Officer Azevedo has consistently testified that he had probable cause for Plaintiff's arrest because the car in which Plaintiff sat had an expired registration. Plaintiff concedes that the registration on the vehicle had expired, but claims that Officer Silva's account presents an "irreconcilable inconsistenc[y]" with Officer's Azevedo's account. Plaintiff maintains that Officers Silva and Azevedo offer conflicting stories about when the license plate was "searched." Officer Azevedo testified that as he pulled his car behind (and just to the side of) Plaintiff's vehicle, he saw that the registration tags on Plaintiff's vehicle were expired and he proceeded to run the plate. Plaintiff points to Officer Silva's testimony in which he stated that he did not recall noticing the license plate of the vehicle when Azevedo stopped the patrol car nor does he recall Azevedo saying anything about the license plate. He further testified that he "assume[d]" the license plate was run when Plaintiff's name was searched in the database. Taking these alleged inconsistencies, Plaintiff maintains that "[i]t would have been impossible to determine whether the registration of the car was expired without searching the license plate."

Contrary to Plaintiff's position, a license plate tag displaying an expired registration does not have to be searched, as it is in plain view. There is no reasonable expectation of privacy in a license plate and the information found on the plate. See, *e.g.*, *United States v. Evans*, 27 F.3d 1219, 1228 (7th Cir. 1994); *Shah v. Village of Hoffman Estates*, 2000 WL 1705294, at *4 (N.D. Ill. Nov. 13, 2000) ("A person does not have a reasonable expectation of privacy on matters open to public observation."). The Court evaluates the facts establishing probable cause "as they would have appeared to a reasonable person in the position of the arresting officer—seeing what he saw, hearing what he heard." *Id.* Officer Azevedo testified that he saw the expired tags, and

9

it certainly is reasonable to expect that Officer Azevedo, in close proximity to the vehicle, on a street with the street lights illuminated, would be able to decipher the color of and the month and year printed on the registration sticker affixed to the license plate on Plaintiff's vehicle.

Plaintiff maintains that Officer Silva's testimony—that he did not recall discussing the tags or running the plates prior to searching the vehicles' occupants—is sufficient to create a genuine issue of material fact regarding whether Officer Azevedo observed the tags and ran the registration. In support of his position, Plaintiff relies on *Carmichael v. Village of Palatine*, in which the Seventh Circuit emphasized that the "reasonableness of the seizure turns on what the officer knew, not whether he knew the truth or should have known more." 605 F.3d 451, 457-58 (7th Cir. 2010) (officer who maintained that reason for stopping car was because of inoperative tail and brake lights did not have probable cause to effectuate arrest of Plaintiff for tinted windows and absence of front license plate because there was no evidence that arresting officer knew the car had tinted windows or was missing a front license plate); see also *Reynolds v. Jamison*, 488 F.3d 756, 765 (7th Cir. 2007) ("The fact that an officer later discovers additional evidence unknown to her at the time of the arrest * * * is irrelevant—we only care about what the officer knew at the time the decision was made.").

Plaintiff's reliance on *Carmichael* is misplaced. In *Carmichael*, there was no evidence that the arresting officer knew that the car had tinted windows or was missing a front license plate when he pulled his gun and ordered the plaintiff to "freeze." 605 F.3d at 458. The Seventh Circuit highlighted the fact that "all of the defendants, including Officer Sharkey, admitted, in their response to plaintiffs' 56.1 statement, that Officer 'Sharkey *did not observe tinted windows* on the vehicle Carmichael was driving before he stopped the vehicle,' and that he 'does not know whether or not the vehicle that Carmichael was driving had a front license plate.'" *Id.* at

10

458 (emphasis in original). The *Carmichael* court further noted that in response to plaintiffs' counsel's question about whether Officer Sharkey knew that the car had tinted windows, Officer Sharkey stated that he "*did not observe anything else* [other than the brake lights] on the vehicle that [he] knew to be a traffic violation at the time." *Id.* The Court concluded that the district court misapprehended the record when it based its determination that Officer Sharkey had probable cause to effect the arrest on the basis of tinted windows and the absence of a front license plate.

*Carmichael* emphasized what the arresting officer "knew" at the time of the arrest. See 605 F.3d at 458 (resting decision on the fact that the arresting officer admitted that he did not observe the facts that served as the basis for probable cause prior to the arrest). Unlike the facts presented in *Carmichael*, in the present case, there is evidence that Officer Azevedo knew of the expired registration tag before approaching the vehicle. See Azevedo Dep. at 23 (In response to plaintiff's counsel's question about what he did after he stopped his vehicle a couple feet behind the subject's vehicle, Officer Azevedo testified, "I noticed his Illinois state registration was expired."); Azevedo Dep. at 26 ("I learned that it was expired so I approached for a field interview"). Officer Azevedo consistently has maintained that he observed the expired plates when he pulled the squad car behind and slightly to the side of Plaintiff's vehicle. Thus, the only remaining question is whether Officer Silva's testimony is sufficient to create a genuine issue of material fact by casting doubt on Officer Azevedo's account.

In *Davis v. Novy*, the Seventh Circuit upheld a district court's probable cause finding in circumstances much like those presented in the summary judgment record here. 433 F.3d 926, 929 (7th Cir. 2006). In *Davis*, the district court found that probable cause for a vehicle stop was proper when the officer, who was looking for a man in a black truck taking photographs of a

young girl, identified an obscured registration sticker on the license plate of the plaintiff's green truck and pulled him over. On appeal, the plaintiff maintained that the officer did not see the obscured sticker until later (although the plaintiff admitted that the sticker was in fact obscured). *Id.* The plaintiff relied on three pieces of circumstantial evidence: (1) when the plaintiff asked about the reason for the stop, the officer didn't mention the obscured sticker but instead told him about the child-picture-taking complaint; (2) the officer didn't stop him as soon as he allegedly saw the obscured sticker; (3) the transcript of the radio communications among the officers and the dispatcher contained no mention of an obscured sticker. *Id.* The Seventh Circuit determined that this evidence did not "seriously" call into question whether the officer saw the obscured sticker before stopping the plaintiff's truck. *Id.* The court reasoned that the officer followed the truck for about a half a mile before signaling him to pull over and the court could not imagine that the officer did not look at the truck's rear license plate during that time because "that's what police officers do when following a vehicle." *Id.* The court also noted that it is not "unexpected that an officer will hold back from telling a motorist all of his reasons for initiating a stop." *Id.* At the end of its analysis, the court stated, "Simply put, Davis does not dispute that the sticker was obscured, and he has not presented sufficient evidence to persuade a rational factfinder that Novy did not see it before the stop as he testified." 433 F.3d at 929.

Consistent with the holding and rationale of *Davis*, the Court does not believe that Officer Silva's testimony "seriously calls into question" whether Officer Azevedo observed the expired tag prior to his contact with the occupants. The only evidence addressing whether Officer Azevedo observed the plate with the expired tag is Azevedo's testimony. Officer Silva's testimony that (1) he did not recall noticing the plate of the parked car, (2) he did not remember Azevado saying anything about an expired registration prior to walking up to the parked car, and

(3) he remembers the license plate being run after Plaintiff had been ordered out of the car does not cast doubt on Azevado's testimony that he observed an expired tag on the license plate that was in his plain sight.

Plaintiff maintains that "[i]t would have been impossible to determine whether the registration of the car was expired without searching the license plate." But that assertion is incorrect. To be sure, running the plate through a computer search might provide a good deal of additional information about the vehicle (and perhaps its owner), but as to the expiration of the license tag, it would only confirm what was in plain view. Running the tag thus was not necessary to an officer's ability to make initial determination that the registration appeared to be expired. At most, the evidence presented by the parties supports a finding that one officer believed that the plate was expired based on his contemporaneous personal observation and the other officer cannot recall whether he knew that it was expired before or after the search of the vehicle and its occupants.

Again, analogizing to *Davis*, although the court of appeals did not explicitly address the fact that the radio communications did not reference the sticker, the court appears not to have been persuaded by the fact that the arresting officer did not discuss the sticker with the other officers prior to the plaintiff's arrest. Furthermore, as in *Davis*, there is no dispute here that a violation occurred. The results of the license plate search—that the last name and address on the vehicle's registration matched Plaintiff's and that the registration had indeed expired—only confirmed Officer Azevedo's initial determination that an offense was being committed. And finally, as noted by the *Davis* court, looking at license plates is among the things that officers are trained to do. Officer Silva's inability to recall (and assumptions about) when the plate was run

do not cast doubt on Azevedo's testimony that he observed the expired sticker as he sat in the squad car behind Plaintiff's vehicle. See *Davis*, 433 F.2d at 929.

Plaintiff also contends that the officers' mistaken belief that the occupants of the car were violating a lighting ordinance creates a material issue of fact regarding whether the officers had probable cause. In their depositions, both officers admitted that they were suspicious of the car because it was parked in a "high crime" area and the headlights of the car were turned off. See Azevedo Dep. at 26 (In response to Plaintiff's counsel's question about why he first "stopped" the car, he agreed that it was because of the city ordinance regarding the lights). Both officers also admitted that they were mistaken about the headlight ordinance. However, Officer Azevedo unequivocally stated that he also noticed the expired registration prior to his contact with its occupants. Officer Azevedo's testimony that he had observed the expired plate prior to coming into contact with its occupants gave him probable cause to conduct a field interview. Whether he also was under the mistaken apprehension that the occupants were violating an additional ordinance is of no consequence. *Cf. Duncan v. Fapso,* 216 Fed. Appx. 588, at *2 (7th Cir. Feb. 15, 2007) (finding that because the officer had probable cause to make an arrest for criminal trespass, it did not matter that the officer announced he was arresting the plaintiff for possession of drugs, so long as he had probable cause to arrest for *any* offense); *United States v. Smith,* 80 F.3d 215, 219 (7th Cir. 1996) (finding probable cause for a stop based only on the presence of an air freshener hanging from the rearview mirror, despite the officer's subjective suspicions of the vehicle, because the "Fourth Amendment analysis is objective" in nature); *Williams v. Rodriguez,* 509 F.3d 392, 400-01 (7th Cir. 2007) (holding that the facts known to the officer, when viewed objectively, were sufficient to arrest plaintiff for a traffic violation without violating the Fourth Amendment, despite the fact that the officer's "subjective reason for making

the arrest was driving under the influence"). As explained by the Supreme Court in *Whren v. United States,* whether an action is reasonable under the Fourth Amendment is determined objectively "whereby, 'the fact that the officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action taken as long as the circumstances, viewed objectively, justify that action.'" Thus, a court looks at whether a reasonable officer with the same information known to Defendant Officers at the time of incident would have had probable cause to stop Plaintiff. Here, what was "known" to at least one of officers at the time of the stop was that the vehicle had an expired tag, a fact that was confirmed by both officers after a search was run on the plates.

Additionally, to the extent Plaintiff maintains that both officers needed to have the requisite probable cause, Plaintiff has not presented, nor has the Court found, any authority that indicates that all arresting officers must possess the requisite probable cause at the same time for the arrest or citation to be valid. *Cf. People v. Bramlett*, 793 N.E.2d 203, 211-12 (Ill. App. Ct. 1st Dist. 2003) ("When officers are working in concert, probable cause to arrest can be established from all the information collectively received by the officers even if that information is not specifically known to the officer who makes the arrest."); *Carter v. City of Chicago*, 2004 WL 1093718, at *3 (N.D. Ill. May 3, 2004) ("When officers are working in concert on an investigation, probable cause for an arrest may be established by information possessed by any of those officers.").

Similarly, Plaintiff's observation that the car did not belong to him is of no legal significance in this case. Plaintiff contends that he was not in violation of 09-76-160(f) because he was not the person who parked the vehicle and the vehicle was not registered in his name. Yet in his complaint, throughout discovery, and in his response to Defendants' summary

15

judgment motions, Plaintiff claims that Defendant Officers unlawfully seized *his* vehicle. Then, for purposes of refuting a probable cause determination, Plaintiff attempts to separate himself from the vehicle that he claims was unlawfully seized from him. However, Section 09-76-160(f) clearly states that it is "illegal to park a vehicle on any roadway if the registration plate or other registration material fails to comply with this subsection." There is no dispute that the vehicle at issue was parked on the roadway and that the registration materials did not bear evidence "of proper registration for the current period." The propriety of the traffic stop does not depend on whether Plaintiff was actually guilty of committing a traffic offense by being in a vehicle with expired plates. Rather, the pertinent question is whether it was reasonable for Defendants to believe that Plaintiff was in violation of the ordinance. See *United States v. Cashman,* 216 F.3d 582, 587 (7th Cir. 2000) (finding that whether the plaintiff was guilty of a traffic offense because of a cracked windshield does not affect the propriety of the traffic stop). The Court finds that an officer in the position of Officer Azevedo could reasonably think that Plaintiff, whose last name and address matched the vehicle's registrant and who possessed the vehicle on the night of August 10, 2008, was violating the law.

Because "[p]robable cause to arrest is an absolute defense to any claim under Section 1983 against police officers for wrongful arrest, false imprisonment, or malicious prosecution" (*Mustafa*, 442 F.3d at 547), the Court grants summary judgment to Defendants on Plaintiffs' unlawful seizure and unreasonable detention claims (Counts I and III). Additionally, because there was probable cause for Plaintiff's arrest, Cook did not have a valid driver's license, and there was no other individual present and able to take possession of the vehicle, Defendants' impoundment of Plaintiff's vehicle was not unlawful. See, *e.g.*, *United States v. Duguay*, 93 F.3d 346, 353 n.2 (when supported by probable cause of criminal activity, an officer's decision

to impound a vehicle is valid). Therefore, summary judgment also is granted to Defendants on Plaintiff's claim of unlawful seizure of property (Count II).[3]

B. **Plaintiff's Monell Claim**

As set forth by Plaintiff in his response brief, the essence of Plaintiff's *Monell* claims against the City of Chicago are that (i) the City failed to properly train its officers to obtain probable cause before handing out municipal tickets to vehicles in violation of 09-76-090(a) or (b); (ii) the City failed to properly train its officers to obtain reasonable suspicion prior to conducting field investigations of such vehicles; and (iii) the City instructed its officers that it was appropriate to conduct a field investigation of a car parked without its lights upon a lighted street such that officers wrongly believed it was a municipal code violation to park on a lighted street without lights on.

There is no vicarious liability under *respondeat superior* against a government entity for the acts of its employees. *Collins v. City of Harker Heights, Texas*, 503 U.S. 115, 120 (1992). Congress did not intend a municipality to be liable unless the action complained of was done pursuant to official municipal policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy. *Monell v. New York City Department of Social Services*, 436 U.S. 665, 694 (1978); see also *Collins*, 503 U.S. at 120-121, *Pembaur v. City of Cincinnati*, 475 U.S. 469, 477 (1986); *City of Canton v. Harris*, 489 U.S. 378 (1989); *Bd. of Cty. Comm. of Bryan Cty., OK v. Brown.*, 520 U.S. 397 (1997). "Misbehaving employees are responsible for their own conduct[;] 'units of local government are responsible only for their policies rather than misconduct by their workers.'" *Lewis v. City of Chicago*, 496 F.3d 645, 656 (7th Cir. 2007) (quoting *Fairley v. Fermaint*, 482 F.3d 897, 904 (7th Cir. 2007)).

---

[3] Having determined that Defendants had probable cause to arrest Plaintiff, the Court need not reach the question of whether Defendants are entitled to the "additional layer of protection against civil liability" provided by qualified immunity. See *Carmichael*, 605 F.3d at 459.

A plaintiff can establish a municipal policy in one of three ways, either by "(1) an express policy that, when enforced, causes a constitutional deprivation; (2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority." *Roach v. City of Evansville*, 111 F.3d 544, 548 (7th Cir. 1997). Consequently, to establish liability against the City, a Plaintiff must prove that: "(1) he suffered a deprivation of a federal right; (2) as a result of either an express municipal policy, widespread custom, or deliberate act of a decision-maker with final policy-making authority for the [Village]; which (3) was the proximate cause of his injury." *Ienco v. City of Chicago*, 286 F.3d 994, 998 (7th Cir. 2002).

Plaintiff argues that the City of Chicago is liable for failing to adequately train and supervise the Defendant Officers. Municipal liability may arise through a policy of inadequate training. *City of Canton*, 489 U.S. at 388. However, before analyzing whether a municipality caused a plaintiff's harm, a court must determine that the harm suffered by the plaintiff was in fact a deprivation of a federal right. See *Collins*, 503 U.S. at 120 ("[P]roper analysis requires us to separate two different issues when a § 1983 claim is asserted against a municipality: (1) whether plaintiff's harm was caused by a constitutional violation, and (2) if so, whether the city is responsible for that violation."). As this Court has determined that Plaintiff's constitutional rights have not been violated, his claim against the City fails as a matter of law. Accordingly, summary judgment is granted on Count VI.

### C. Plaintiff's State Law Claims

Because the Court grants summary judgment to Defendants as to all claims (Counts I, II, III, and VI) over which it has original jurisdiction, it must now address whether to retain

jurisdiction over those state law claims. See 28 U.S.C. § 1367(c)(3). In addition to federal claims for unlawful seizure of Plaintiff (Count I), unlawful seizure of Plaintiff' property (Count II), unreasonable detention (Count III), a *Monell* violation (Count VI), Plaintiff has asserted state law claims for malicious prosecution (Count IV) and false imprisonment (Count V). The Seventh Circuit consistently has stated that "it is the well-established law of this circuit that the usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial." *Groce v. Eli Lilly*, 193 F.3d 496, 501 (7th Cir. 1999); *Alonzi v. Budget Constr. Co.*, 55 F.3d 331, 334 (7th Cir. 1995); *Brazinski v. Amoco Petroleum Additives Co.*, 6 F.3d 1176, 1182 (7th Cir. 1993). Finding no justification for departing from that "usual practice" in this case,[4] the Court dismisses without prejudice Plaintiff's state law claims for malicious prosecution (Count IV) and false imprisonment (Count V).

---

[4] In *Wright v. Associated Ins. Cos.*, 29 F.3d 1244, 1251-53 (7th Cir. 1994), the Seventh Circuit noted that there occasionally are "unusual cases in which the balance of factors to be considered under the pendent jurisdiction doctrine-judicial economy, convenience, fairness, and comity-will point to a federal decision of the state-law claims on the merits." The first example that the Court discussed occurs "when the statute of limitations has run on the pendent claim, precluding the filing of a separate suit in state court." *Id.* at 1251. That concern is not present here, however, because Illinois law gives Plaintiff one year from the dismissal on jurisdictional grounds of state law claims in federal court in which to re-file those claims in state court. See 735 ILCS 5/13-217; *Davis v. Cook County*, 534 F.3d 650, 654 (7th Cir. 2008). Dismissal without prejudice also is appropriate here because substantial judicial resources have not been committed to the state law counts of Plaintiff's complaint. *Wright*, 29 F.3d at 1251.

**III.    Conclusion**

For these reasons, the Court grants Defendants' motion for summary judgment [73] on Counts I, II, III, and IV.  The Court dismisses without prejudice Plaintiff's state law claims for malicious prosecution (Count IV) and false imprisonment (Count V).

Dated:  May 4, 2011                              _____
                                                 Robert M. Dow, Jr.
                                                 United States District Judge